**In re John J. ALEXANDER and Norma L. Alexander, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**FARMERS STATE BANK OF LEED, NORTH DAKOTA; and Phillip D. Armstrong, Trustee of the Estates of John J. Alexander and Norma L. Alexander, Defendants.**

**Bankruptcy No. 82–05153.**
**Adv. No. 85–7028.**

United States Bankruptcy Court,
D. North Dakota.

April 17, 1985.

Jerome C. Kettleson, Bismarck, N.D., for plaintiff.

Jonathan R. Fay, Fargo, N.D., for defendant Bank.

Phillip D. Armstrong, Minot, N.D., for defendant Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on a Motion to Dismiss filed on April 1, 1985, by the Defendant, Farmers State Bank of Leeds (BANK). By its Motion, the Bank challenges the Bankruptcy Court's authority to extend its jurisdiction over the subject matter of the instant adversary case.

By Complaint filed March 5, 1985, the Plaintiff, United States of America, acting through the Farmers Home Administration (FHA), commenced suit against the Bank seeking the Bankruptcy Court's determination regarding competing priorities in the Debtors' machinery given to both the Bank and FHA as collateral. In addition, FHA seeks determination that a previous administrative expense award be paid to it from the proceeds of the machinery.

A brief summary of the background giving rise to the instant adversary case is

helpful. On July 26, 1982, and September 3, 1982, respectively, the Trustee commenced two separate adversary actions in an effort to establish his priority over the competing security interests of the Bank and FHA. In the adversary case brought by the Trustee against the Bank, the Bankruptcy Court found that the Bank's security interest in the Debtors' machinery was superior to that of the Trustee. Subsequently, the Bank was granted relief from stay and permitted to sell the machinery providing that the proceeds be escrowed until further court order. The machinery was sold in the spring of 1984, and the proceeds are presently in escrow with the Bank. Similarly, in the Trustee's action against FHA, the Bankruptcy Court found FHA's security interest in the same machinery to be superior to that of the Trustee. In August of 1984, the Bankruptcy Court entertained the Bank's motion for allowance of an administrative expense for depreciation occurring to the machinery while in possession of the Trustee. The Bank was awarded a priority administrative expense of $13,500.00 with direction that any amounts paid to the Bank as administrative expenses be held in escrow by the Bank until the competing claim of FHA and the Bank to said monies was resolved.[1]

The Trustee has no claim to the machinery proceeds and, in answer to the FHA's present Complaint for determination of priority, indicates he has in his possession $7,277.44 available for distribution and which amount he proposes to distribute to the Bank as an administrative claim.

By the instant Motion for dismissal, the Bank argues that the property does not constitute property of the estate or property in which the estate has an interest. FHA believes that the Bankruptcy Court has the requisite jurisdiction to entertain the dispute particularly in view of the fact that the Bankruptcy Court made separate findings regarding the security interest of each of the claimants and would, by entertaining jurisdiction herein, be merely concluding an issue begun in Bankruptcy Court. It is interesting to note that the FHA, in a past objection to reopening the administrative expense hearing, stated that "the relative priority of liens is a matter between the Bank and FHA and does not concern the Trustee nor the estate" (objection filed September 10, 1984).

The FHA long ago aptly framed the present issue. The instant adversary presents the Bankruptcy Court with a priority dispute between two creditors of the Debtors. Resolution of the conflict involves no issue of bankruptcy law but turns solely on application of the North Dakota state statutes bearing on perfection of security interests.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act), the Bankruptcy Court has no grant of general jurisdictional authority but is restricted by the provisions of section 1334 of 28 U.S.C. which specifies the legal controversies that can arise before a bankruptcy court. This grant of jurisdiction may be broken down into four categories:

(1) All cases under Title 11;

(2) All civil proceedings arising under Title 11;

(3) All civil proceedings arising in cases under Title 11; and

(4) All civil proceedings related to cases under Title 11.

The grant of jurisdiction to the Bankruptcy Court exists only with regard to those claims or causes of actions which are capable of being included in at least one of the foregoing categories. The first category, "cases under Title 11", is distinct from the other three and simply means the original bankruptcy petition itself from which all other bankruptcy proceedings spring. A

---

1. The Bank, by Motion filed August 12, 1984, sought an order determining and allowing administrative expenses for the use of the machinery which was subject to the competing security interests of the Bank and FHA. The administrative expenses allowed represents the depreciation and deterioration caused to the machinery and, as such, determination as to which party is ultimately entitled to the administrative expense monies turns upon the priority question now presented.

civil proceeding "arises" under Title 11 when it is the type of proceeding typically associated with bankruptcy adjudication. Section 157 of the 1984 Act has made an effort to define these types of proceedings as being "core" proceedings. They are those types of proceedings which spring from the operation and application of the Bankruptcy Code itself. A civil proceeding "arising in a case" under Title 11 is the type of claim or proceeding that secondarily springs from a pending case which arose under Title 11. The final category is made up of those civil proceedings which do not arise under Title 11 or in a case under Title 11 but are nonetheless "related" to cases under Title 11.

The Bankruptcy Court may hear all cases in each of the four categories but may determine, that is to say, resolve by entry of judgment, only those cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. As to the last category, non-core proceedings related to a case under Title 11, the Bankruptcy Court may hear the case but may not render a final judgment. A bankruptcy judge's authority over non-core proceedings which are related to a case under Title 11 is restricted to hearing the case and submitting proposed findings of fact and conclusions of law to the district court who in turn enters final judgment. *See* section 157(c)(1). If the parties consent, the district court may allow the bankruptcy court to also enter final judgment in such cases. *See* section 157(c)(2).

■ The term "core" proceedings is not defined in the Bankruptcy Code but, by enumerated illustrations set out in section 157(b)(2), was meant to encompass those proceedings which would not exist at law in absence of the Bankruptcy Code. One court has defined the term as including those proceedings at the core of the bankruptcy court's power—proceedings which would have no existence outside of a bankruptcy proceeding. *See In re Seton-Scherr, Inc.*, 26 B.R. 563 (Bankr.D.Ohio 1983). Core proceedings, by definition, include matters covering the administration

of the estate, section 157(b)(2)(A), and other proceedings affecting the liquidation of assets or adjustment of the debtor-creditor or equity security holder relationship. *See* section 157(b)(2)(O). The apparent broad application that could be given to section 157(b)(2)(A) and (O) must be tempered by *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and the specifically enumerated categories of section 157(b)(2). Although section 157(b)(2) is a non-exclusive list of what constitutes core proceedings, this Court does not believe the sections or categories should be interpreted or expanded so as to in effect emasculate the jurisdictional proscriptions of the *Marathon* case. Clearly, subsections 157(b)(2)(A) and (O) should not be interpreted to include related non-core proceedings since section 157(c)(1) specifically prevents a bankruptcy judge from rendering final judgments in such instances. A common sense interpretation of the term "core" would dictate that it includes only those proceedings which are specifically set forth in either section 157(b)(2) or in the Bankruptcy Code itself. This is the interpretation which this Court believes is the most correct and which will be relied upon when the question is presented.

■ From the foregoing definitions, this Court must find that FHA's cause of action in the instant case is not a core proceeding arising under Title 11 nor is it one arising in a case under Title 11. Thus, this Court does not have jurisdiction under section 157(b)(2) to hear and finally determine the case. As previously outlined, however, this does not preclude the Bankruptcy Court from hearing the case if, despite the fact that it is not a core proceeding, it is otherwise related to the case under Title 11.

As with "core" proceedings, the term "related" proceeding is not precisely defined by the 1984 Act. The Emergency Rule upon which the 1984 jurisdictional amendments were based does define, in a limited fashion, a "related" matter as being a claim which would have existed irrespective of the fact of a bankruptcy, including

claims brought by the estate against persons who have not filed claims against the estate. In other words, the cause of action must in some way *relate* to the administration of the bankrupt estate. That is to say, there must be some reason why adjudication of the claim is better placed with the Bankruptcy Court as opposed to a state court. Courts previously construing the term "related" have said that it means that there exists a direct relationship to administration of the bankrupt estate. As noted in *Heagle v. Haug*, 19 B.R. 223 (Bankr.D. Ore. 1982):

> "[T]here must be a reasonable nexus or logical connection between the civil proceeding for which jurisdiction is sought and the parent bankruptcy proceeding. A tenuous connection between the controversy and the debtor, his assets and the administration of his estate will not support jurisdiction..."19 B.R. at 24.

Further guidance is afforded by the Tenth Circuit Court of Appeals in the recent case of *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984) which defined a related proceeding as:

> Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court..."

The Tenth Circuit, in the foregoing case, noted that the term related proceeding as referred to by the *Marathon* decision was given a narrow definition as pertaining only to the proposition that a "traditional state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an Article III court if it is to be heard by any court or agency of the United States". *Marathon*, 458 U.S. at 92, 102 S.Ct. at 2882.

■ The machinery and the proceeds thereof now in dispute are not the property of the Debtors nor the Debtors' estate, and the conflict between the Bank and FHA over the machinery and the proceeds would have no effect whatsoever on any aspect of the Debtors' bankruptcy case. This Court is mindful that the case has been open since 1982, but FHA's argument that in the interest of avoiding protracted delay this Court ought to take jurisdiction can have no bearing on disposition. Jurisdiction, if it exists, must spring from the specifically enumerated grants of jurisdiction accorded the Bankruptcy Court. As before noted, the Bankruptcy Court is not a court of general jurisdiction and does not have jurisdiction over non-related claims or proceedings. It lacks the jurisdiction to either hear or decide private lien priority disputes involving secured creditors whose dispute does not either directly or indirectly affect the debtor or property of the estate.

Accordingly, and for the reasons herein stated, the Defendant's Motion is GRANTED, and the Complaint of the United States of America, acting through the Farmers Home Administration is dismissed for want of jurisdiction.

IT IS SO ORDERED.