**FARMERS HOME ADMINISTRATION, Appellant,**

v.

**FARMERS STATE BANK OF HOSMER, Appellee.**

**(In re James Rodney DOHN, et al.,**

**Civ. No. 86–1020.**

**Bankruptcy No. 184–00028.**

United States District Court, D. South Dakota, N.D.

Dec. 19, 1986.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

On January 24, 1986 the Bankruptcy Court entered an order entitling Farmers State Bank of Hosmer (Bank) to $990.89 in attorney fees. The fees are to be recovered from the debtors, James Rodney Dohn and Judith Ann Dohn, or from funds held in escrow by the Farmers Home Administration (FmHA) from the liquidation and sale of certain of debtors' property or Bank's collateral. The FmHA is to pay the Bank the $990.89.

The FmHA has appealed the January 24, 1986 order on two grounds. First, that the bankruptcy court lacked jurisdiction to enter such an order. Second, even if jurisdiction existed the Bankruptcy Court improperly relied on 11 U.S.C. § 506(b) as the basis for its order.

## FACTS

Sometime prior to December 23, 1983 the Dohns became indebted to the FmHA. On December 23, 1983 the Bank and the FmHA entered into a subordination agreement which would benefit the Dohns. (See Appendix A). Debtors were in need of funds for operating expenses. FmHA agreed to subordinate its first security interest in certain livestock and machinery of the debtors to the Bank in exchange for a $9,400 loan from the Bank to the Dohns.

In bankruptcy, debtors initially filed under Chapter 13 on March 2, 1984 but later converted to Chapter 11 on September 7, 1984. On January 8, 1985 Bank filed a proof of claim in the Dohns' bankruptcy which included a claim for the $9,400 loaned the Dohns for operating expenses.

Fifteen days later the Dohns, the Bank, and the FmHA entered into a stipulation for the sale of collateral (certain livestock) and the use of the proceeds as cash collateral. By order, the Bankruptcy Court adopted the stipulation.

On October 15, 1985 the Dohns again converted their bankrupt estate, this time to a Chapter 7 petition.

Robert J. Haar, Asst. U.S. Atty., Sioux Falls, S.D., for appellant.

Greg L. Peterson, Aberdeen, S.D., for appellee.

By November 20, 1985 the debtors' livestock had been sold for cash collateral and the $9,400 loan had been paid off with the proceeds. A balance of $1,399.23 remained and is being held in escrow at the local FmHA office in Leola, South Dakota.

The Bank, on November 26, 1986, filed a motion pursuant to 11 U.S.C. § 506(b) for application of proceeds. From the proceeds being held in escrow, the Bank sought payment of its attorney fees. The motion was heard before the Bankruptcy Court on January 16, 1986 and on January 24 an order was entered granting the Bank's application.

### ISSUE # 1: JURISDICTION

■ The first issue raised on appeal by the FmHA is whether the Bankruptcy Court had jurisdiction to order the FmHA to pay the Bank's attorney fees. In its January 24, 1986 order, the Bankruptcy Court concluded that it had jurisdiction pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(A), (B), and (0).

The FmHA disagrees asserting that the matter of attorney fees is "a dispute between two creditors of the bankruptcy debtor, Dohn. The conflict involves no issue of Bankruptcy Law." The contention is that this matter "does not involve either property of the debtor or property of the estate." *In Re Dr. C. Huff Company, Inc.*, 44 B.R. 129, 135 (Bankr.W.D.Ky. 1984).

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, as well as 28 U.S.C. § 1334, bankruptcy courts have jurisdiction over "all civil proceedings arising under Title 11." *In Re Alexander*, 49 B.R. 733, 735 (Bankr.D.N.D.1985). "A civil proceeding 'arises" under Title 11 when it is the type of proceeding typically associated with bankruptcy adjudication. Section 157 of the 1984 Act defines these types of proceedings as 'core' proceedings." *Id.* at 735–36. The term "core" proceeding "includes only those proceedings which are specifically set forth in either section 157(b)(2) or in the Bankruptcy Code itself." *Id.* at 736.

As part of the Code, Section 506(b) provides for the possible recovery of attorney fees by oversecured creditors. It states:

> To the extent that an allowed secured claim is secured by property the value of which, ..., is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees ... provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (1986).

The Bank in its motion for application of proceeds, sought to recover its attorney fees pursuant to § 506(b). For jurisdiction purposes, the merits of the Bank's motion is irrelevant. What is important is that an action brought under § 506(b) for attorney fees is a core proceeding over which the bankruptcy court has jurisdiction. *See* 28 U.S.C.S. § 157(b)(1) and (2) (1986); *see In Re Alexander*, at 736.

Moreover, the FmHA asserts that the subordination agreement between the Bank and itself and the payment of fees does not involve bankruptcy law nor the debtors or their property. To the contrary, the subordination agreement involves livestock and machinery of the Dohns. The livestock were sold for cash collateral and the Bank seeks payment of its attorney fees from the remaining sales proceeds pursuant to the Bankruptcy Code.

### ISSUE # 2: 11 U.S.C. § 506(b)

■ The second issue raised on appeal by the FmHA is whether the Bankruptcy Court erred by concluding that the Bank is entitled to its reasonable attorney fees pursuant to § 506(b) of the Code.

The FmHA contends that the Bank is not an oversecured creditor and is therefore precluded from recovering its attorney fees under the Code.

Section 506(b) establishes that an oversecured creditor is entitled to reasonable attorney fees where the underlying security agreement provides for the collectability of fees. *In Re Nordmann*, 56 B.R. 634, 636 (Bankr.D.S.D.1986); 11 U.S.C.S. §§ 506(a) and (b) (1986). The only issue presented is

whether the Bank is an oversecured creditor.

An oversecured creditor is a holder of an allowed secured claim which is secured by collateral of greater value than the allowed secured claim. *Id.* The Bank's allowed secured claim in this matter is $9,400. It filed an unobjected-to proof of claim in that amount on January 8, 1985. The collateral, according to the written subordination agreement entered into by the Bank and FmHA on December 23, 1983, securing the $9,400 claim, is certain livestock and machinery. The collateral was actually sold for more than the amount of the $9,400 loan.

Appellant FmHA insists that the Bank cannot be oversecured since the subordination agreement expressly limits the Bank's secured interest in the collateral to $9,400, the identical amount of the loan. The Bankruptcy Court disagreed in its January 24, 1986 order by finding that the limitation in the subordination agreement contained inconsistent, vague and ambiguous terms. The agreement was thus construed against its drafter, appellant FmHA, resulting in a decision that the Bank's interest in the collateral could exceed $9,400 and that the Bank is an oversecured creditor.

It is the holding of this court that the limitation in the subordination agreement, taken as a whole, does not contain inconsistent terms which make it vague and ambiguous. The pertinent portion of the agreement reads:

> This subordination is limited to the amount actually loaned by the Lender to the Borrower (principal and accrued interest) for the foregoing purposes and also the amount actually advanced for foreclosure costs and other advances made or to be made by the Lender, for a total limitation not to exceed $9,400. Any amount which is in excess of this figure will not be covered by this subordination unless prior written consent was obtained from the Government for incurring the expenditure in question.

One might read this limitation as containing inconsistent terms if the first sentence is viewed alone. For example, it initially appears inconsistent to state that the subordination is limited to the amount actually loaned, but the lender may recover principal and accrued interest. Or, that the subordination is not to exceed $9,400, but may cover other advances made or to be made by Lender [Bank].

The limitation, however, consists of more than the first sentence. There are two sentences and the entire agreement must be considered as a whole to determine the intent of the parties. *S & S Trucking v. Whitewood Motors, Inc.,* 346 N.W.2d 297, 299 (S.D.1984);

The last sentence of the key paragraph of the quoted portion of the agreement (supra) allows for subordination beyond $9,400, but only with the written consent of the Government. Taken as a whole then, the agreement limits the Bank's secured interest in the collateral to $9,400. The bank could not obtain an increased subordination amount without written FmHA consent given subsequent to and apart from the subordination agreement. Absent proof that the Bank subsequently obtained FmHA written consent to an increase in the $9,400 limit, the Bank's collateral value is $9,400. Thus, the Bank is not an oversecured creditor within the meaning of 11 U.S.C. § 506(b), and is not entitled to its requested attorney fees.

# APPENDIX A

USDA-FmHA
Form FmHA 460-2
(Rev. 5-2-83)

*Position 1 - Chattel Security*
*Position 5 - Real Estate Security*

## SUBORDINATION BY THE GOVERNMENT

The United States of America acting through the Administrator of the Farmers Home Administration (hereinafter called the "Government") is the owner and holder of the following-described instrument(s) executed by ___James R. Dohn___
and _____ of ___McPherson___
County, State of ___South Dakota___ :

| Title of Instrument | Date of Instrument | Date Filed | Office Filed | Document File or Book No. | Page No. |
|---|---|---|---|---|---|
| Financing Statement | | 01-15-81 | Sec. of State | 105896 | |
| Financing Statement | | 01-14-81 | Reg. of Deeds | 6289 | |

AND, ___Farmers State Bank___ (hereinafter called the "Lender") has agreed to loan $__9,400.00__
to ___James R. Dohn___ and _____
(hereinafter called the "Borrower") for the following purposes:

1983 Operating Expense

THEREFORE, in consideration the Lender's agreement to make such loan to Borrower, the Government hereby (1) consents for the Borrower to obtain said loan from the Lender for such purposes, and (2) agrees to and hereby subordinates in favor of the Lender and his/her successors and assigns its liens or security interests created or evidenced by the above-described instrument(s) insofar as they cover the following- described property.

11- (Borrower's share) Share calves – Average weight 350-400 lbs.
27- Stock Cows – Mixed – Average weight 1000 lbs.
14- 1983 Calf increase – Mixed – Average weight 400 lbs.
1-Grinder Mixer (NH)
1-Vermeer Baler
1-MF Wheel Rake
1-Gehl Skid Loader
1-Great Bend Loader
1-Melroe Plow & Packer
1-JD Drill

1-AC Corn Picker
1-Feteral Auger
1-Case Tractor

This subordination is limited to the amount actually loaned by the Lender to the Borrower (principal and accrued interest) for the foregoing purposes and also the amount actually advanced for foreclosure costs and other advances made or to be made by the Lender, for a total limitation not to exceed $__9,400.00__ .* Any amount which is in excess of this figure will not be covered by this subordination unless prior written consent was obtained from the Government for incurring the expenditure in question. (Replaces subordination dated 03-01-83)

IN WITNESS WHEREOF, The United States of America has caused this subordination to be signed on the __23__ day of ___December___ 19_83_, pursuant to the delegated authority published in 7 CFR Part 1800.

WITNESS: _____

UNITED STATES OF AMERICA,

BY ___Neal C. Nelson___
　　　NEAL C. NELSON
Title ___County Supervisor___
*Farmers Home Administration,*
*U.S. Department of Agriculture.*

*(NOTE TO LENDER: You are advised to obtain a perfected security interest on the above property. When the indebtedness has been satisfied please mark this form "PAID IN FULL" and return it to the Farmers Home Administration at the following address: _____

P. O. Box E, Leola, SD 57456 _____ .)