In the Matter of COMMERCIAL HEAT TREATING OF DAYTON, INC., Debtor.

COMMERCIAL HEAT TREATING OF DAYTON, INC., Plaintiff,

v.

ATLAS INDUSTRIES, INC., Defendant.

Bankruptcy No. 3–83–02561.
Adv. No. 3–85–0184.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 9, 1987.

**DECISION ON ORDER DENYING DE-
FENDANT'S MOTION TO DISMISS**

THOMAS F. WALDRON, Bankruptcy
Judge.

### I. INTRODUCTION OF ISSUES
### PRESENTED

This adversary proceeding involving the
collection of a prepetition account receiva-
ble presents significant issues of statutory
interpretation concerning the amendments
to Title 28 enacted in connection with the
Bankruptcy Amendments and Federal
Judgeship Act of 1984, Public Law 98–353,
(BAFJA). Specifically, this proceeding
raises issues concerning jurisdiction in
bankruptcy cases and proceedings, this Dis-
trict's Standing Order referring bankrupt-
cy cases and proceedings to the Bankrupt-
cy Court and the procedures to be followed
by Bankruptcy Courts in determining re-
ferred cases and proceedings.

The statutes granting jurisdiction (28
U.S.C. § 1334) and governing jurisdictional
procedure (28 U.S.C. § 157) in bankruptcy
cases and proceedings are set forth in **Title
28—Judiciary and Judicial Procedure,** not
Title 11—Bankruptcy. While it would ap-
pear unnecessary to make such an obvious
point, adversary proceedings are often
commenced in this court without compli-
ance with the pleading requirements of
Bankruptcy Rule 7008 concerning jurisdic-
tion. Further, there are indications that
this initial lack of compliance is being com-
pounded by a failure to comply with the
specific pleading requirements concerning
core or non-core proceedings recently
adopted in Rules 7008(a) and 7012(b)[1].

Thomas B. Talbot, Jr., Dayton, Ohio, for
plaintiff.

Louis J. Hattner, Toledo, Ohio, for defen-
dant.

1. **(a) APPLICABILITY OF RULE 8 F.R.Civ.P.**

Rule 8 F.R.Civ.P. applies in adversary pro-
ceedings. The allegation of jurisdiction re-
quired by Rule 8(a) shall also contain a refer-
ence to the name, number, and chapter of the
case under the Code to which the adversary
proceeding relates and to the district and divi-
sion where the case under the Code is pend-
ing. In an adversary proceeding before a
bankruptcy judge, the complaint, counter-
claim, cross-claim, or third-party complaint
shall contain a statement that the proceeding
is core or non-core and, if non-core, that the

pleader does or does not consent to entry of
final orders or judgment by the bankruptcy
judge. Bankr.R. 7008
**(b) APPLICABILITY OF RULE 12(b)–(h)
F.R.Civ.P.**
Rule 12(b)–(h) F.R.Civ.P. applies in adver-
sary proceedings. A responsive pleading shall
admit or deny an allegation that the proceed-
ing is core or non-core. If the response is
that the proceeding is non-core, it shall in-
clude a statement that the party does or does
not consent to entry of final orders or judg-
ment by the bankruptcy judge. In non-core

These concerns prompt the court to begin with such an explicit reference to **Title 28—Judiciary And Judicial Procedure.**

In order to understand the complexity of what may appear to be a simple issue—an attempt by the debtor in possession to collect a prepetition account receivable—a limited review of the United States Supreme Court's decision in *Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and Congress' legislative response, BAFJA, is necessary.[2]

In *Northern Pipeline*, the United States Supreme Court, in a plurality opinion, held unconstitutional the congressional grant of jurisdiction which provided "[t]he bankruptcy court for the district in which a case under Title 11 is commenced shall exercise *all* of the jurisdiction conferred by this section on the district courts. § 1471(c) (1976 ed., Supp. IV) (emphasis added)." *Id.* at 54 n. 3, 102 S.Ct. at 2862 n. 3. The plurality opinion reasoned that the separation of power's doctrine was violated because the legislation attempted to confer the complete judicial power of the United States contained in Article III of the Constitution upon judges who did not possess the complete protections of life tenure and irreducible salary contained in that same Article.

While it is clear that *Northern Pipeline* discussed a number of other issues, including congressionally created exceptions to Article III, public/private rights adjudications and the status of issues related entirely to state law (*Id.* at 64–91, 102 S.Ct. at 2867–82), it is also clear from subsequent Supreme Court decisions that in *Northern Pipeline* the Court was "[U]nable to agree on the precise scope and nature of Article III's limitations." *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985):

> proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties. Bankr.R. 7012.

**2.** For extended reviews, see Countryman, *Scrambling To Define Bankruptcy Jurisdiction:*

The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review. (Citation omitted) *Id.*

The most recent Supreme Court decision on this subject, *Commodity Futures Trading Com'n. v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), reaffirms the above statement as the holding in *Northern Pipeline.*

*Northern Pipeline* also concluded that the grant of jurisdiction to the bankruptcy court could not be severed from the remainder of the then existing bankruptcy legislation. Although the Supreme Court stayed the mandate of its decision in *Northern Pipeline* so that Congress could have time to enact revised bankruptcy legislation, the final extension of the stay expired before Congress acted.

The Judicial Conference of the United States, prepared for the possibility that Congress might not act before the stay expired, had recommended a proposed emergency rule (the Interim Rule), which, with minor modifications, had been adopted in all the circuits. This Interim Rule became, to a very great extent, the model for Congress' revised bankruptcy legislation, BAFJA. As a result of the significant identity between the Interim Rule and BAFJA, decisions expressed by circuit courts concerning the Interim Rule have precedential value in decisions concerning BAFJA. (A copy of the Interim Rule as it was adopted in this circuit may be found in the Appendix to *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 265 (6th Cir. 1983).)

The congressional response to the constitutional infirmity announced in *Northern*

*The Chief Justice, the Judicial Conference and the Legislative Process,* 22 Harv.J.Legis. 1, (1985); King, *Jurisdiction and Procedure Under The Bankruptcy Amendments Of 1984,* 38 Vand. L.Rev. 4, at 675 (1985).

*Pipeline* is found in two sections of Title 28: § 1334—**Bankruptcy cases and proceedings** and § 157—**Procedures** (see Appendix).

As finally enacted by Congress, BAFJA provides that the district courts shall have original and exclusive jurisdiction of all cases under title 11 (§ 1334(a)) and original, but not exclusive jurisdiction of all civil proceedings arising under, arising in or related to cases under title 11 (§ 1334(b)).

The district court **may** abstain from hearing a particular proceeding (§ 1334(c)(1)) and, in certain circumstances, **shall** abstain from hearing a particular proceeding (§ 1334(c)(2)).

The district court may, but is not required to, refer any or all bankruptcy cases and any and all proceedings under title 11 to the bankruptcy judge(s) for the district (§ 157(a)). Such an order of reference has been entered in this district.[3] In certain circumstances, the district court is required to withdraw a particular proceeding in a bankruptcy case; and, the district court retains the authority to withdraw any case or proceeding previously referred to the bankruptcy judge (§ 157(d)).

After the case has been referred to the bankruptcy judge, upon motion of a party, or upon the court's own motion (§ 157(b)(3)), a determination is made that a particular proceeding is either a core proceeding or a non-core proceeding (§ 157(b)(2)). This determination establishes the manner in which the bankruptcy judge's decision will be expressed. In core matters, the bankruptcy judge's decision is expressed in a final determination subject only to ordinary appellate review (§ 157(b)(1)). In non-core matters, the bankruptcy judge's decision is expressed in proposed findings of fact and conclusions of law which are submitted to the district court for final entry after review of any appropriate objection (§ 157(c)(1)); however, in a non-core proceeding, if the parties consent to the bankruptcy judge entering a final order, the final order is then subject only to ordinary appellate review (§ 157(c)(2)).

Although constitutional issues continue to be implicated in the present jurisdictional scheme, and BAFJA has not been specifically examined by the United States Supreme Court, it is significant to recognize that, while circuit courts continue to acknowledge these constitutional concerns, there is no circuit court decision holding unconstitutional the present congressional enactments governing jurisdiction and jurisdictional procedures in bankruptcy cases and proceedings.

## II. PLEADINGS AND ARGUMENTS OF THE PARTIES

The pleadings demonstrate a simple set of facts in this adversary proceeding.

The plaintiff, a Chapter 11 debtor in possession, is presently liquidating all remaining assets, including an account receivable claim. Plaintiff's complaint (Doc. 1) alleges jurisdiction pursuant to 28 U.S.C. § 1334 and refers to 28 U.S.C. § 157, in each instance, without additional specification. Plaintiff alleges a contract with the defendant pursuant to which heat treating services and materials in the amount of $7,725.20

---

3.  IN THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
IN THE MATTER OF:

THE BANKRUPTCY AMENDMENTS      MS 1–84–152
AND FEDERAL JUDGESHIP ACT
OF 1984

ORDER

The President has signed into law the Bankruptcy Amendments and Federal Judgship [sic] Act of 1984. Section 157(a), Chapter 6 of Title 28, United States Code, provides that "any and all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the Bankruptcy Judges for the District."

Accordingly, IT IS ORDERED that all such cases and proceedings now pending in the Bankruptcy Court or hereinafter filed are so referred to Bankruptcy Judges pursuant to Section 157(a) of the Act, *supra*; and that the Bankruptcy Judges for this District are directed to accept the jurisdiction conferred upon them by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and to function thereunder. This Order shall be effective retroactively to July 10, 1984. This Court's June 28, 1984 Orders pertaining to the selection and appointment of Special Masters, Consultants and Magistrates to Hear Bankruptcy Matters are hereby rescinded effective July 10, 1984.

Entered July 30,1984

S/
Carl B. Rubin, Chief Judge
United States District Court

were provided to the defendant. The debt remains unpaid.

The defendant's answer (Doc. 5): denies the allegation pursuant to 28 U.S.C. 1334 and the reference to 28 U.S.C. § 157; admits a contract existed with the plaintiff for heat treating services and materials; denies the remainder of plaintiff's allegations; and asserts that the plaintiff fails to state a claim upon which relief can be granted.

The defendant filed a separate motion to dismiss and memorandum (Doc. 9), to which the plaintiff filed an opposing memorandum (Doc. 16). Neither party has filed any further pleadings or memoranda.

The plaintiff argues (Doc. 16) that a number of bankruptcy courts have held that the collection of prepetition accounts receivable (or similar contract claims) are within the jurisdiction of the bankruptcy court as core proceedings citing various combinations of § 157(b)(2)(A), (E) and (O): *Baldwin–United Corp. v. Thompson*, 48 B.R. 49 (Bankr. S.D.Ohio 1985), *In re Perry, Adams, & Lewis Securities*, 30 B.R. 845 (Bankr.W.D. Mo.1983) and *Cotton v. Shirah*, 49 B.R. 926 (Bankr.N.D.Ga.1985). The plaintiff further argues that this court is the proper venue for this proceeding, which is in the nature of a turnover proceeding, and the presence of state law contract issues does not determine whether this is a core or non-core proceeding.

The defendant argues (Doc. 9) that this proceeding is not a turnover proceeding, but rather a breach of contract action, and as such, it is a non-core proceeding for which no jurisdiction under 28 U.S.C. § 1334 exists in the district court, and accordingly no jurisdiction could exist in the bankruptcy court, citing *Northern Pipeline*, 458 U.S. at 92, 102 S.Ct. at 2882, *White Motor Corp. v. Citibank* N.A., 704 F.2d 254, 266 (6th Cir.1983), *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1285 (10th Cir.1984), *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464, 465–66 (D.Mass.1985), *In re Bokum Resources Corp.*, 49 B.R. 854, 866 (Bankr. D.N.Mex.1985), *In re Alexander*, 49 B.R. 733, 736 (Bankr.D.N.D.1985). The defend-

ant further argues that in the absence of jurisdiction under 28 U.S.C. § 1334, this action does not meet the diversity requirements under 28 U.S.C. § 1332, and there being no other proper basis for federal jurisdiction, jurisdiction and venue for this cause of action is the Court of Common Pleas in Sandusky County, Ohio.

### III. OPINION

#### A. Determination Pursuant To 28 U.S.C. § 1334(a) and (b)—Jurisdiction

The threshold issue raised by the defendant's motion to dismiss is this court's "lack of jurisdiction" (Doc. 9) to hear the plaintiff's complaint.

■ A recognition of the difference between the **existence of jurisdiction** and the **exercise of jurisdiction** in bankruptcy cases and proceedings is fundamental to an understanding and resolution of the issues presented in this proceeding and may provide guidance for future proceedings. The **existence of jurisdiction** in a bankruptcy case or proceeding rests on a broad and complete constitutionally authorized direct grant of authority by Congress to the district courts over all matters and proceedings that are connected to a bankruptcy case. The **exercise of jurisdiction** by a bankruptcy court in a bankruptcy case or proceeding rests on a limited and circumscribed reference of derivative authority from the district court to the bankruptcy court over most, but not all, proceedings that are connected to a bankruptcy case.

This broad grant of authority establishing the existence of jurisdiction in the district court has been recognized repeatedly in various circuit opinions. *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir. 1987), *Matter of Wood*, 825 F.2d 90 (5th Cir.1987), *In re Mankin*, 823 F.2d 1296 (9th Cir.1987), *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987).

The Sixth Circuit decisions which specifically recognize this broad grant of authority include *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir.1987); *In re Salem Mortg. Co.*, 783 F.2d 626 (6th Cir.

1986); and *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983) (which upheld the constitutionality of the Interim rule adopted following *Northern Pipeline*) wherein the court stated:

First, the *Northern Pipeline* decision simply does not question the jurisdiction of the district courts. *Id.* at 259

. . . . .

Since the formation of the nation, the federal judiciary has had an obligation of the highest order to maintain a stable, functional process of dispute resolution in cases arising under federal law. In particular, the drafters of the Constitution considered the creation of a uniform bankruptcy system to be so important that they included a special section in Article I of the Constitution providing for federal power in this area.[3] Since Congress has mandated that the district courts have original jurisdiction in bankruptcy cases, the district courts have the responsibility to ensure that bankruptcy matters proceed to conclusion in a fair and expeditious manner. (footnote omitted) *Id.* at 261

. . . . .

We believe that the powers reserved by the district courts in the interim rule satisfy the Supreme Court's concern that Art. III courts adjudicate bankruptcy cases. The constitutional rights of the parties to a bankruptcy proceeding are not violated when the bankruptcy courts with derivative jurisdiction assist the district courts. *Id.* at 263

This position was amplified by the Sixth Circuit's decision in *Salem Mortgage,* 783 F.2d at 626. In that case, the bankruptcy judge's proposed order approving the class certification and the settlement of a class action suit was reversed by the district court as a matter over which the district court (and accordingly, the bankruptcy court) did not have jurisdiction.

In reversing the district court's decision and reinstating the bankruptcy judge's order, the Sixth Circuit in *Salem* made evident that the jurisdictional grant contained in BAFJA was to be construed in the broadest constitutionally permissable man-

ner. After noting in the body of the decision the absence of legislative history accompanying present 28 U.S.C. § 1334 and then reviewing the legislative history in connection with former 28 U.S.C. § 1471(a)–(c), the court discussed the relationship between the jurisdictional grant declared unconstitutional in *Northern Pipeline* and the present jurisdictional grant enacted in BAFJA:

The only difference between the version of 28 U.S.C. § 1334(a)–(b) proposed in S. 2266 and 28 U.S.C. § 1471(a)–(b) as it became law in the Bankruptcy Reform Act is that the last line of subsection (b) was changed from "arising *under* or related to cases under title 11" to "arising *in* or related to cases under title 11." This change took place in the compromise bill agreed upon by the House and Senate floor managers and, while there is no explanation of it in the legislative history, it appears to be a stylistic change. The floor managers' joint explanatory statement refers to bankruptcy jurisdiction as "pervasive jurisdiction over all proceedings arising in or related to bankruptcy cases." 124 Cong.Rec. 32,410 (Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. 34,010 (Oct. 5, 1978) (statement of Sen. DeConcini).

After the Supreme Court struck down section 1471(c) in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted the new jurisdictional statute in 28 U.S.C. § 1334. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 101, 98 Stat. 333,333; *see supra* notes 3–4, Section 1334(a)–(b) retains the prior jurisdictional language and there is every reason to believe that Congress had no desire to contract the jurisdictional grant in any way. Congress could, after all, have easily cured the constitutional infirmity announced in *Northern Pipeline* by restricting the bankruptcy courts to their prior jurisdiction under the Bankruptcy Act of 1898. *Id.* at 633 n. 17.

Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. *Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.*

The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11. The term "proceeding" is used instead of "matters and proceedings," the terminology currently used in the Bankruptcy Act and Rules. As used in this section everything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes and [sic] disputes related to administrative matters in a bankruptcy case. Likewise, the term proceeding includes issues which may arise after a case is closed, such as in a controversy over a reaffirmation agreement under section 524(b) of title I of the bill.

The phrase "arising under title 11" will enable the bankruptcy court to hear any matter under which a claim is made under a provision of title 11. The combination of the three bases for jurisdiction, "arising under the title 11," "arising under a case under title 11," and "related to a case under title 11," will leave no doubt as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court.

S.Rep. No. 989, *supra* note 15, at 153–54, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 5939–40. Id. at 633–34 n. 18 (emphasis added)

The court then concluded,

The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.

Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13. (Bankr.E.D.N.Y.1982) (citations omitted). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.'" *Id.* (citing *Mazur v. U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws. *Id.* at 633–34

This broad interpretation of jurisdiction declared in *Salem*, has been recently reaffirmed in *Southern Indus. Banking*, 809 F.2d at 331.

■ The consistent continuing line of cases recognizing the existence of the broadest constitutionally permissible grant of jurisdiction over all matters connected to a bankruptcy case or proceeding in the district court and approving the reference

of that broad jurisdiction to the bankruptcy judge leaves no doubt that jurisdiction to hear and determine the trustee's action to collect this prepetition account receivable exists in the district court and has been properly referred to this bankruptcy court. To the extent that the defendant's motion to dismiss rests on the proposition that jurisdiction to hear the trustee's complaint does not exist in this bankruptcy court, the defendant's Motion is DENIED.

The more difficult issue presented in this proceeding concerns the manner in which this existing jurisdiction should be exercised by the bankruptcy court.

## B. DETERMINATION PURSUANT TO 28 U.S.C. § 157—CORE/NON–CORE

The seemingly simple issue of whether a debtor in possession (or a trustee) may maintain an action in the bankruptcy court to collect a prepetition account receivable and whether such a proceeding is a core or a non-core proceeding continues to divide extremely capable and concerned bankruptcy courts that have become the centerpiece in the post *Northern Pipeline* jurisdictional puzzle.[4] It would add little to this opinion to list the reported decisions finding in favor of "core" or "non-core" in circumstances similar to the facts of the present proceeding. Counsel have cited some of these decisions in their memoranda and others appear in reported decisions that have been collected and are the subject of commentary.[5] As this opinion demonstrates, such decisions continue to be issued by bankruptcy courts, and will continue to be issued, until appropriate appellate determinations provide a resolution of this issue.

Although the effect of this decision may be to merely augment by one additional decision the number of courts in the column labeled non-core determinations, the intent of this opinion is to publish the reasoning and guidelines used by this court in the resolution of the core/non-core issue presented in this particular proceeding and, in the absence of a contrary controlling decision, the resolution of core/non-core issues in future proceedings.

The genesis of the bankruptcy gloss on the word "core" is credited to Justice Brennan's phrase "[T]he restructuring of debtor-creditor relation, which is at the **core** of the federal bankruptcy power," (emphasis added) announced on 458 U.S. page 71, 102 S.Ct. at 2871 in *Northern Pipeline*. The word core was the designation selected by Congress for those proceedings in which the bankruptcy judge would enter a final determination subject only to ordinary appellate review. A non exclusive listing of core proceedings appears at 28 U.S.C. § 157(b)(2)(A) through (O) (see Appendix). It is obvious from the text of certain provisions of § 157—(A) matters concerning the administration of the estate; (E) orders to turn over property of the estate; and, (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims—that those courts holding that the collection of a prepetition account receivable is a core proceeding can find linguistic support for their decisions. The difficulty in holding that the collection of a prepetition account receivable is a core matter is not that language in § 157(b)(2) fails to provide support, but that the principles in *Northern Pipeline* do not permit such a holding. Although the broad wording found in § 157(b)(2)(A) and (O) has been claimed as an appropriate basis for a finding that the collection of a prepetition account receivable is a core proceeding, the elastic language in these provisions is too unstable a foundation for such a holding. *In re Castlerock Properties*, 781 F.2d 159, 161–62 (9th Cir.1986). Again, it must be recalled that the issue presented is not the existence of jurisdiction in the bankruptcy court to hear such proceedings; but rather, the exercise of that jurisdiction in a constitutionally permissible manner. As the Fifth Circuit recently stated:

---

**4.** Countryman, *The Bankruptcy Judges: Jurisdiction By Neglect,* 92 Com.L.J. At 7 (1987)

**5.** *Id.* at 15 n. 57—(core determinations); *Id.* at 15 n. 59—(non-core determinations)

We note that the last example is broadly worded; indeed "proceedings affecting ... the estate" is similar in scope to the test of jurisdiction: proceedings having a "conceivable effect on the estate". We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act. That purpose is to conform the bankruptcy statute to the dictates of *Marathon*.[25] (footnote omitted) *Matter of Wood*, 825 F.2d 90, 95 (5th Cir.1987)

Among the obvious reasons explaining the struggle by courts to determine whether a specific proceeding, particularly the collection of a prepetition account receivable, is a core or non-core proceeding is the absence of a congressional definition of core or non-core. Section 157(b) does not define core proceedings. It merely gives some examples of congressional identifications of core proceedings—"(2) Core proceedings include, but are not limited to— ...." Likewise Justice Brennan's discussion in *Northern Pipeline* was not an attempt to define a core proceeding, but merely to provide an example of a non-core proceeding. "But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case." *Id.* 458 U.S. at 71, 102 S.Ct. at 2871.

An examination of the characteristics necessary for a non-core proceeding will be helpful since the category of non-core proceedings is an extremely limited category and all proceedings which do not contain the required characteristics of non-core will be determined core.

As the First Circuit noted in *Arnold Print Works*, 815 F.2d at 165:

Further, the legislative history of the new statute indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or con-gruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. *See* 130 Cong.Rec. E1108–E1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); *id.* at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness). They used arguments strongly suggesting that they were pressing the notion to its constitutional bounds. They referred to the suits in the non-core category as "Marathon-type" cases, *see, e.g., Id.* at E1108, E1109 (daily ed. March 20, 1984) (prepared statement of Representative Kastenmeier); *id.* at H1848 (daily ed. March 21, 1984) (statement of Representative Kindness), which they understood to be proceedings of "a very limited kind," *id.* at H1848 (daily ed. March 21, 1984) (statement of Representative Kindness). at 168

As a result of the legislative intent to give the broadest constitutionally permissable definition to core proceedings, evidenced both by congressional statements and the non-exclusive listings in § 157(b)(2), in proceedings where the existence of jurisdiction has been determined, unless it appears that a particular proceeding contains the required characteristics of non-core, the proceeding will be determined a core proceeding.

■ A non-core proceeding is identified by the following characteristics—a proceeding filed in the bankruptcy court alleging a cause of action that:

(1) is not **specifically** identified as a core proceeding under § 157(b)(2)(B) through (N),

(2) existed prior to the filing of the bankruptcy case,

(3) would continue to exist independent of the provisions of Title 11, and,

(4) in which the parties rights, obligations or both are not significantly affected as a result of the filing of the bankruptcy case.

Thus, in *Northern Pipeline*, the only Supreme Court decision determining a proceeding to be a non-core proceeding, the

action by Northern Pipeline, the Chapter 11 debtor in possession, filed in the bankruptcy court against Marathon for a prepetition breach of a pipeline construction contract, was—a proceeding filed in the bankruptcy court alleging a cause of action that:

(1) would not have been **specifically** identified as a core proceeding under § 157(b)(2)(B) through (N),

(2) existed prior to the filing of the bankruptcy case,

(3) would continue to exist independent of the provisions of title 11, and,

(4) the parties rights, obligations, or both would not have been significantly affected as a result of the filing of the bankruptcy case.

A similar analysis was recently employed by the Fifth Circuit in *Matter of Wood*, 825 F.2d at 90 an action brought by a stockholder against the Chapter 11 debtors and a third party non-debtor related corporation to recover an alleged wrongful appropriation of corporate assets:

The meaning of core proceedings is illuminated also by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.[32] Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal question jurisdiction in

which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases.[33] In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by *Marathon.* Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11— matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings—matters that could arise only in bankruptcy.

We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiff's suit is not based on any right created by

the federal bankruptcy law. It is based on the state created rights.[34] Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court. (footnotes omitted) *Id.* at 96–97

Although under the analysis in this decision the elastic language found in § 157(b)(2)(A) and (O) would not justify finding the collection of a prepetition account receivable to be a core proceeding, the analysis would not be complete without a discussion of § 157(b)(2)(E)—orders to turn over property of the estate;.... The wording in this provision of § 157(b)(2) contains language that would appear to include a proceeding in the bankruptcy court to collect a prepetition account receivable as a core proceeding. A prepetition account receivable becomes property of the estate upon the filing of the case. (11 U.S.C. § 541(a)(1), *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Section 542(b) provides:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

A collection of the bankruptcy cases containing contrary holdings in core/non-core determinations concerning the collection of accounts receivable under 157(b), together with the cogent reasoning supporting a determination that such proceedings are non-core proceedings can be found in *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 167–75 (Bankr.E.D.N.Y.1986). (*See also In re STN Enterprises, Inc.,* 73 B.R. 470, 476–86 (Bankr.D.Vt.1987)). In *Acolyte,* the court reasoned,

> To the extent that any lawsuit (*Marathon* included) seeks the recovery of funds predicated only upon a successful determination of liability it could be ar-

gued that it constitutes a turnover. The statute, however, must contemplate something more, else the constitutional defect in the pre-**BAFJA** state of the law recognized by *Marathon* would in no way have been improved by that legislation.

.    .    .    .    .

> To the extent that a **BONAFIDE** dispute exists with regard to the existence of an identifiable fund or res, a proceeding to recover that res is not a turnover within the meaning of **BAFJA** unless and until the existence, magnitude and identity of the res are first established. The jurisdiction to establish this existence, magnitude and identity is precisely what *Marathon* prohibits Congress from granting to the bankruptcy court. In order to protect the constitutional integrity of **BAFJA,** it must therefore be read so as not to include contested collection suits to be core proceedings. (emphasis in original) *Id.* at 171

The present proceeding by the debtor in possession to collect a prepetition account receivable is: a cause of action that **(1)** would not have been **specifically** identified under § 157(b)(2)(B) through (N), **(2)** existed prior to the filing of the bankruptcy case, **(3)** would continue to exist independent of the provisions of title 11, and, **(4)** the parties rights, obligations or both are not significantly affected (i.e. increased, diminished, altered) as a result of the filing of the bankruptcy case.

▪ The court concludes that a proceeding to collect a prepetition account receivable that is subject to a **BONAFIDE** dispute is a non-core proceeding. The court reaches this conclusion aware of the various express and inherent arguments and concerns that surround this issue—congress could (or should) have enacted a better legislative response to *Northern Pipeline;* it is as anomalous that a bankruptcy court can enter a final judgment ordering millions of dollars paid to or from an estate in a core proceeding, but must only recommend findings of fact and conclusions of law in a non-core proceeding involving the smallest amount; an obvious result of this

conclusion will be an increased expenditure of time and money by litigants, counsel, and various state and federal courts as all participants, willing and unwilling, attempt to determine their proper place in the jurisdictional puzzle, etc.

The court determines that to the extent that the defendant's motion asserts that this proceeding is a non-core proceeding it is correct.

### C. Determinations Pursuant to 28 U.S.C. § 1409—Venue

The defendant's assertion that "The Defendant has its place of business in Sandusky County, Ohio, therefore, the Common Pleas Court of Sandusky County, Ohio, is the proper court in which to have this action heard." (Doc. 9 at 8) is without merit. The operative venue provision is 28 U.S.C. § 1409—**Venue of proceedings arising under title 11 or arising in or related to cases under title 11** (See Appendix).

■ It is clear that the cause of action in this proceeding does not arise "[A]fter the commencement of such case from the operation of the business of the debtor ..." (§ 1409(d), nor does it attempt "[T]o recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000...." (§ 1409(b). Therefore, neither of the exceptions found in subsection (b) and (d) of Section 1409 are applicable. Accordingly, under 28 U.S.C. § 1409(a) "Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."

■ Although diversity of citizenship could provide an independent basis for venue in appropriate circumstances (*In re Excelite Corp.*, 49 B.R. 923 (Bankr.N.D.Ga. 1985)), diversity of citizenship is not a requirement for jurisdiction or venue in bankruptcy cases or proceedings. Further, the cause of action in this proceeding proposes to recover a money judgment of $7,725.20 together with interest on a business debt.

6. *Countryman*, 92 Com.L.J. at 17.

Venue is proper in this bankruptcy court where the action was commenced. *In re Robert's Furniture, Inc.*, 70 B.R. 29, 31 (Bankr.S.D.Ohio 1987), *Matter of Van Huffle Tube Corp.*, 71 B.R. 155, 156–57 (Bankr. N.D.Ohio 1987), *In re Allegheny Inc.*, 74 B.R. 397, 399–400 (Bankr.W.D.Pa., 1987).

## IV. CONCLUSION

Although one commentator has pointed out that the present "[S]ystem is no way to run a busy railroad",[6] it is necessary to recognize that the present system is the only system currently available.

A clear designation of the appropriate § 157(b) track for the transportation of a debtor in possession's proceeding to recover a prepetition account receivable would be a welcome addition to freightyard; however, until such an appropriate appellate directional signal is put in place, delivery in this court should proceed in accordance with this decision.

An order consistent with this decision DENYING the defendant's motion to dismiss is simultaneously entered, together with an order setting a trial date and requiring counsel to advise the court of their decision concerning consent pursuant to 28 U.S.C. § 157(c)(2).

SO ORDERED.

### APPENDIX 1.

**28 U.S.C. Sec. 1334**

**JURISDICTION**

**§ 1334. Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

## § 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A

determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

## § 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11

(a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

(b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000 only in the district court for the district in which the defendant resides.

(c) Except as provided in subsection (b) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under section 541 or 544(b) of title 11 in the district court for the district where the State or Federal court sits in which, under applicable nonbankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under title 11 had not been commenced.

(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

(e) A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought

an action on such claim, or in the district court in which such case is pending.