Dorothy **ROBINSON**, Celeste Cherry, Mable Davis, Warren Gaither, and Ida Jones, Plaintiffs–Appellants,

v.

**MICHIGAN CONSOLIDATED GAS CO.**, **INC.**, and David W. Allard, Jr., Jointly and Severally, Defendants–Appellees.

Nos. 89–2097, 89–2098.

United States Court of Appeals, Sixth Circuit.

Argued July 23, 1990.

Decided Nov. 1, 1990.

Rehearing Denied Dec. 11, 1990.

Douglas Spicer, argued, Ypsilanti, Mich., for plaintiffs-appellants.

James E. Wynne, argued, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant-appellee Michigan Consol. Gas Co. Inc.

Michael J. Hughes, argued, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., for defendant-appellee David W. Allard, Jr.

Before KEITH and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.   ·

RALPH B. GUY, Jr., Circuit Judge.

The plaintiffs, tenants of an apartment building administered by the defendant bankruptcy Trustee, David Allard, appeal summary judgment on their state law claims against the Trustee and the Michigan Consolidated Gas Company (MichCon). Plaintiffs contend that the district court had no jurisdiction to issue its decision, that the court erred in finding their state law claims preempted by federal law, and that the court abused its discretion in ignoring their motion to amend their complaint against the Trustee.

We find that the court properly exercised jurisdiction over this case, but erred in granting summary judgment to MichCon and erred in failing to consider the plaintiffs' motion to amend their complaint against Allard. Accordingly, we remand.

## I. Background

Since at least December of 1985, plaintiffs have been tenants in an 18–unit apartment building located at 445 Fisher Freeway in Detroit.[1] From the early 1970s until December of 1985, 445 Fisher Freeway was managed by Edith Woodberry and James Fuller operating through the Woodward East Management and Rental Company (Woodward).

---

1. Plaintiff Celeste Cherry is no longer a tenant at 445 Fisher Freeway; she was, however, a resident of the building at all times relevant to this appeal.

On December 4, 1985, defendant Mich-Con, together with other creditors, filed a Chapter 7 involuntary bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan against Woodward and five other affiliated corporations. *In re Woodward East Project, Inc.*, No. 85–04269–G (Bankr.E.D. Mich. Dec. 4, 1985). Sometime prior to this filing, MichCon had ceased providing gas service to the central boiler at 445 Fisher Freeway due to Woodward's failure to pay gas bills. On December 9, 1985, acting to "preserve the property of the estate, to prevent loss to the estate, and in the best interests of the creditors," the bankruptcy court entered an order appointing defendant Allard interim Trustee over the Woodward estate. The court ordered that Allard was

> charged with the duties of a trustee as specified in 11 U.S.C. § 704 and that the trustee may operate the business of the Debtors, if such operation is in the best interests of the estate and consistent with the orderly liquidation of the estate, pursuant to 11 U.S.C. § 721....

On February 4, 1986, the bankruptcy court entered an order clarifying Allard's authority to manage 445 Fisher Freeway. The order stated that the Trustee was to have "the right and authority to fully and completely manage the premises commonly known as 445 Fisher Freeway." The court then ordered that "all tenants now or hereafter occupying the premises are directed to pay their full monthly rental to the Trustee and to no other person." The remainder of the order reads as follows:

> IT IS FURTHER ORDERED that the Trustee shall contract with Michigan Consolidated Gas Company ... to provide heating gas service to the premises forthwith.
>
> IT IS FURTHER ORDERED that the Trustee shall receive the rents and from the proceeds thereof pay MichCon for the heating gas service at its authorized rates. The Trustee is also empowered from the proceeds of the rent to pay any reasonable and necessary expenses connected with the management, maintenance, repair or upkeep of the premises.

> The Trustee shall hold any remaining funds pending further order of this Court.
>
> IT IS FURTHER ORDERED that upon restoration of heating gas service MichCon will be entitled to terminate such service five (5) days after filing with the Court and serving upon the interested parties an affidavit showing that either (1) there has been a tampering or interference with the gas service to the building, or (2) proper payment has not been made by the Trustee for any heating gas service rendered.

Also on February 4, the bankruptcy court issued an injunction prohibiting Edith Woodberry and James Fuller from communicating with their tenants concerning the payment of rents or the management of the building. Allard then sent letters to the tenants warning of an impending rent increase because heating gas service would henceforth be included in their monthly rent.

On October 9, 1986, a MichCon employee, James Wennerholt, signed an affidavit stating that Allard was delinquent in payment of gas bills for 445 Fisher Freeway as of September 30, 1986, in the amount $6,585.35, and that MichCon would exercise its right to shut off further gas service no sooner than five days after the filing of the affidavit. The affidavit was served on two of Woodward's creditors and on Edith Woodberry. None of the plaintiffs in this action were served.

On October 29, MichCon discontinued gas service to 445 Fisher Freeway. Plaintiff Gaither filed an affidavit stating that MichCon had never notified him of the proposed discontinuance or of the procedure that the occupants could follow to provide for the continuation of service.

Plaintiffs filed the complaint in this case in Wayne County Circuit Court on November 21, 1986, naming Allard and MichCon as defendants and seeking relief for violations of various Michigan statutes and of section 56 of the Detroit Code governing termination of utility service. In particular, they complained that MichCon had dis-

continued gas for space heat to 445 Fisher Freeway without providing the notices required by Detroit Code §§ 56–4–1 through 56–4–35, resulting in loss of the opportunity to retain heating and hot water by paying rent into an escrow account. Plaintiffs also alleged that Allard had "caused the discontinuance of gas to the premises by his omission to pay for the gas" in violation of the Detroit Code and Michigan State law. As relief, plaintiffs requested that the court "enjoin[ ] Defendant ALLARD from leaving the premises in a state in which there is no space heat or hot water" and "from again omitting to pay the gas bill." They also requested an injunction requiring MichCon to restore gas service for space heat and hot water and preventing it from cutting off such service except in compliance with the Detroit Code. Finally, plaintiffs requested damages in an unspecified amount against both defendants. The Wayne County Circuit Court refused to act on the complaint while the bankruptcy court retained jurisdiction. On December 4, 1986, the bankruptcy court ordered Allard to abandon Woodward's contract to manage 445 Fisher Freeway.

On December 15, the defendants in the Wayne County action filed a timely petition for removal with the United States District Court for the Eastern District of Michigan, basing jurisdiction on 28 U.S.C. §§ 1441, 1442(a)(3), and 1452. The defendants filed their answers in federal court and then moved for summary judgment. Plaintiffs moved to remand the case to state court due to lack of jurisdiction and, alternatively, urged the court to abstain, citing 28 U.S.C. § 1334(c)(2). The plaintiffs also moved to amend their complaint to assert other state and municipal law claims against Allard.

The court granted Allard's motion for summary judgment on May 26, 1988. Plaintiffs then filed a timely motion for reconsideration. On August 23, 1989, the court granted MichCon's motion for summary judgment, denied plaintiffs' motion for reconsideration of the judgment against Allard, and deemed all remaining issues, including those raised in the motion to remand and the motion to amend the complaint, "moot" in light of the entry of the final judgments. The plaintiffs now appeal both orders of summary judgment as well as the court's refusal to consider their motions on the ground of mootness.

As it stands before us, this appeal presents three general issues: (1) whether the case was improperly removed from the Wayne County Circuit Court and ought therefore to be remanded to that court; (2) whether summary judgment was appropriate on the state law claims contained in the original complaint; and (3) whether the district court improperly failed to allow the plaintiffs to amend their complaint against Allard. We address each issue in turn.

## II. The District Court's Jurisdiction

As noted above, the district court did not respond to the plaintiffs' motion to remand until after having granted judgment in favor of both defendants, at which time it explained that "[b]ecause this Court has granted summary judgment to both Defendants in this action, the remaining motions are MOOT." This decision was erroneous. The federal courts are courts of limited jurisdiction, and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them. *See Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Federal Trade Comm'n v. Owens–Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989). Accordingly, we undertake our own consideration of the district court's jurisdiction on appeal. *In re Rini*, 782 F.2d 603, 608–09 (6th Cir.1986).

The defendants assert that the court had jurisdiction over this case on the basis of three removal statutes: (1) 28 U.S.C. § 1452, providing for removal of "claims related to bankruptcy cases"; (2) 28 U.S.C. § 1441, the general federal question removal statute; and (3) 28 U.S.C. § 1442(a)(3), allowing an officer of the federal courts to remove suits commenced against him based upon acts performed under color of his

office. Because we find that the court had jurisdiction under section 1452, we need not consider the alternative bases.

## A. Removal Under 28 U.S.C. § 1452

Section 1452 of title 28, provides, in relevant part:

(a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Section 1334 provides, in relevant part:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

. . . .

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. . . .

The term "cases under title 11" as used in section 1334(a) is a term of art signifying an action commenced in a federal district court or bankruptcy court with the filing of a petition pursuant to 11 U.S.C. §§ 301, 302, or 303. *See In re Wood*, 825 F.2d 90, 92 (5th Cir.1987). Accordingly, the action before us was clearly not a "case under title 11" within the meaning of section 1334(a). We do find, however, that the action was "related to" a case under section 1334(b).

The circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) and its substantially identical predecessor under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(b).[2] As the Third Circuit explained in *In re Pacor, Inc.*, 743 F.2d 984 (3rd Cir.1984):

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (emphasis in original; citations omitted). The *Pacor* formulation has been adopted by the Fourth Circuit, *see In re A.H. Robins Co.*, 788 F.2d 994, 1002 n. 11 (4th Cir.1985) (dicta), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986);

---

**2.** Congress passed the Bankruptcy Reform Act, Pub.L. 95–598, 92 Stat. 2549, in 1978, with the goal of creating more efficient procedures for administering estates in bankruptcy. The Act vested the bankruptcy courts with broad jurisdiction; however, the reform was short lived. In 1982, the Supreme Court decided *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which it declared the jurisdictional provisions of the Act unconstitutional because, in essence, they vested Article III powers in Article I judges. *See In re Wood*, 825 F.2d 90,

91–92 (5th Cir.1987). Congress responded with passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 in which Congress "reenacted the 1978 Act, but divided its jurisdictional grant into 'core' proceedings, over which the bankruptcy courts exercise full judicial power—and 'otherwise related' or 'non-core' proceedings—over which the bankruptcy courts exercise only limited power." *Id.* at 91. Section 1471(b) read exactly as section 1334(b) does now, except that jurisdiction was granted to "bankruptcy courts" rather than "district courts."

the Fifth Circuit, *see In re Wood,* 825 F.2d at 93; the Eighth Circuit, *see In re Dogpatch, U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); and the Ninth Circuit, *see In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). We too have accepted the *Pacor* articulation, albeit with the caveat that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir. 1986); *accord In re Turner,* 724 F.2d 338, 341 (2d Cir.1983).

Because the plaintiffs appear to have sued the Trustee of the Woodward estate in his official capacity, and therefore to seek recovery from the estate itself, *see Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 461 (6th Cir.1982), the outcome of the litigation could conceivably affect the size of the Woodward estate. Accordingly, we agree with the defendants that this action is "related to" a bankruptcy proceeding. Because the district court would have had original jurisdiction over this action as a related proceeding pursuant to 28 U.S.C. § 1334(b), it had removal jurisdiction under 28 U.S.C. § 1452.

■ Our initial inquiry is not at an end, however, because section 1334(c)(2) requires a district court to abstain if "an action could not have been commenced in a court of the United States absent jurisdiction under this section." Mandatory abstention under section 1334(c)(2) is not jurisdictional and must be raised in a timely motion. *See* King, *Jurisdiction and Procedure Under the Bankruptcy Amend-*

*ments of 1984,* 38 Vand.L.Rev. 675, 700–01 (1985). The plaintiffs appear to have met this requirement in their August 31, 1987, motion to remand.

In order to avoid abstention, the defendants must present an independent basis for federal subject matter jurisdiction.[3] They suggest two on appeal: the general federal question statute, 28 U.S.C. § 1331; and the statute providing federal courts with equity jurisdiction over suits against trustees, 28 U.S.C. § 959.

### 1. Jurisdiction Under 28 U.S.C. § 1331

The general federal question statute, 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Supreme Court has long held that a cause of action satisfies the "arising under" requirement of section 1331 and the various other jurisdictional statutes employing identical language, only where the plaintiff's well-pleaded complaint raises an issue of federal law. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 840, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989); *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988).[4] In

---

**3.** The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452. *See In re Revco D.S., Inc.,* 99 B.R. 768, 773–74 (N.D. Ohio 1989); *In re Chiodo,* 88 B.R. 780, 783–85 (W.D.Tex.1988); *Allen County Bank & Trust Co. v. Valvmatic Intern. Corp.,* 51 B.R. 578 (D.C.Ind. 1985); *In re Pacor, Inc.,* 72 B.R. 927, 931 (Bankr. E.D.Pa.), *aff'd,* 86 B.R. 808 (E.D.Pa.1987); *but see In re 666 Associates,* 57 B.R. 8, 12 (Bankr.S. D.N.Y.1985); *In re Ross,* 64 B.R. 829 (Bankr.S.D. N.Y.1986). The purpose of the abstention provisions is discussed in King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 Vand.L.Rev. 675, 702 (1985) ("A probable purpose of this subsection is to preserve 'state's rights' on the theory that not every case

should be tried in the bankruptcy court, particularly if purely state law issues are involved.")

**4.** The well-pleaded complaint rule is applied only to jurisdictional statutes and not to article III, section 2, of the Constitution. In fact, the Court has repeatedly stated that " 'the many limitations which have been placed on jurisdiction under § 1331 are not limitations on the constitutional power of Congress to confer jurisdiction on the federal courts.' " *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 495, 103 S.Ct. 1962, 1972, 76 L.Ed.2d 81 (1983) (quoting *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 379 n. 51, 79 S.Ct. 468, 484 n. 51, 3 L.Ed.2d 368 (1959)). In particular, the Court in *Verlinden* reaffirmed that "the so-called 'well-

*Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the most extensive modern treatment of the well-pleaded complaint rule, the Court explained that in order for "arising under" jurisdiction to attach, " 'a right or immunity created by the institution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' " 463 U.S. at 10–11, 103 S.Ct. at 2846–47 (quoting *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). According to the well-pleaded complaint rule, a federal court does not have original jurisdiction over a case in which the only question of federal law presented is the assertion that federal law deprives the defendant of a defense he may raise, whether that defense is included on the face of the complaint or not. *Franchise Tax,* 463 U.S. at 10, 103 S.Ct. at 2846.

This is true even where, as in the instant case, the defendant claims that federal law preempts the state law claims contained in the complaint, so that:

> [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (citation omitted).

The only exception to the well-pleaded complaint rule is the doctrine of complete preemption. As explained in *Metropolitan Life,* 481 U.S. at 63–67, 107 S.Ct. at 1546–48, "Congress may so completely pre-empt

pleaded complaint' rule, which provides, for purposes of *statutory* 'arising under' jurisdiction, that the federal question must appear on the face of a well-pleaded complaint," *id.,* 461 U.S. at 494, 103 S.Ct. at 1971 (emphasis in original), is not such a limitation. By contrast to statutes employing the term "arising under," article III, section 2 "has been construed as permitting Congress to extend federal jurisdiction to any case of which federal law potentially 'forms an ingredient.' " *Franchise Tax Bd. of*

a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546–47. The scope of complete preemption as recognized by the Supreme Court is extremely limited, existing only where a claim is preempted by section 301 of the Labor Management Relations Act of 1947, *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); where a state law complaint alleges a present right to possession of Indian tribal lands, *see Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); and where state tort or contract claims are preempted by §§ 502(a)(1)(B) and 502(f) of the Employee Retirement Income Security Act of 1974, *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

The defendants would have us augment this list, asserting that Congress has so completely preempted the area of suits against trustees in bankruptcy as to dispose of the jurisdictional requirement of a well-pleaded complaint. As the plaintiffs correctly point out, however, Congress specifically directed that a bankruptcy trustee "shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated...." 28 U.S.C. § 959(b). Accordingly, the preemptive force of the bankruptcy laws in this area is not "so powerful as to displace entirely any state cause of action." *Franchise Tax,* 463 U.S. at 23, 103 S.Ct. at 2853; *In re Whittaker,* 882 F.2d 791, 794 (3rd Cir.1989). In any event, the defendants have provided no evidence whatsoever that Congress intend-

*Calif. v. Construction Laborers Vacation Trust for So. Calif.,* 463 U.S. at 8–9 n. 8, 103 S.Ct. at 2845–46 n. 8 (citing *Osborn v. Bank of United States,* 9 Wheat. 738, 823, 6 L.Ed. 204 (1824)). Insofar as the plaintiffs have read the well-pleaded complaint rule into the Constitution, their arguments regarding the constitutionality of the jurisdictional structure established by Congress for cases related to bankruptcy must fail.

ed to create removal jurisdiction for cases in which preemption under title 11 is an issue. In *Metropolitan Life*, the Supreme Court explained that "the touchstone of the federal district court's removal jurisdiction is ... the intent of Congress," 481 U.S. at 66, 107 S.Ct. at 1547, and found complete preemption only through reliance on an unambiguous statement taken from ERISA's legislative history. Justice Brennan cautioned, in concurrence, that "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." 481 U.S. at 68, 107 S.Ct. at 1548.

As discussed above, the claims contained within the plaintiffs' complaint in this action are each based wholly on state law. Because claims against bankruptcy trustees do not fall within an area completely preempted by the force of federal law, this case could not have been commenced in federal court on the basis of 28 U.S.C. § 1331.

### 2. Jurisdiction Under 28 U.S.C. § 959(a)

The second independent basis for jurisdiction the defendants have proposed is 28 U.S.C. § 959(a). The statute provides:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

It is well settled that "actions against a receiver arising out of his conduct of the receivership business may be brought in the appointing court even though there may not be any independent grounds for asserting federal jurisdiction." C. Wright & A. Miller, *Federal Practice and Procedure* § 2985 at 45; *see also Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398–401 (9th Cir.1970). The basis of the jurisdiction is

that a suit against a receiver or trustee is ancillary to the court's general jurisdiction over the property he administers. *Id.* Neither party has questioned the district court's jurisdiction over the Woodward estate. Accordingly, the plaintiffs could have brought suit against Allard in federal court independently of 28 U.S.C. § 1334.

Given that the plaintiffs could have sued Allard in federal court on the basis of section 959(a), it appears that the case presented to the district court was one "with respect to which an action could ... have been commenced in a court of the United States absent jurisdiction under" section 1334. 28 U.S.C. § 1334(c)(2). The court was not, therefore, required to abstain by the provisions in section 1334(c)(2). Having found that the district court acted within its jurisdiction, we now consider its decisions on the merits.

### III. Summary Judgment in Favor of MichCon

■ The plaintiffs' complaint alleges that MichCon discontinued utility service without notifying the occupants of each rental unit in writing, as required by Detroit Code § 56–4–25, and that because of this failure they were unable to avail themselves of the procedures contained in the Code permitting tenants to forestall utility termination by paying rent into an escrow account. The district court held that the Detroit Code procedures as applied to MichCon in this case "frustrate[ ] the full effectiveness of federal law," and were therefore preempted by the procedures contained in 11 U.S.C. § 366(b). On this basis, the court held the plaintiffs' complaint failed to state a claim against MichCon. For the reasons set forth below, we disagree.

Division 2 of section 56 of the Detroit Code provides a comprehensive framework for regulating the termination of utility service to tenants whose landlords have failed to pay their utility bills. *See generally* Detroit Code §§ 56–4–21 through 56–

4–35.[5]

Section 56–4–22(a) provides that "[a] notice of discontinuance of utility service by any public utility, where the landlord is required under a rental agreement to provide such utility service, is hereby declared to constitute notice and prima facie evidence of an imminent threat and hazard to the health, safety and welfare of the occupants, requiring immediate action to remove such threat and hazard."[6]

The Code requires, *inter alia*, that a utility notify tenants of a proposed discontinuance of service and explain to them the procedure they may follow in order to continue utility service by paying their rent into an escrow account.[7] Section 56–4–26(c) of the Code allows the Detroit Department of Buildings and Safety Engineering to use the monies deposited in the escrow account to pay utility bills submitted to it in accordance with an established procedure and to pay for the remediation of conditions on the premises creating hazards to the health and safety of the tenants. If funds remain after these objectives have been satisfied, the city is authorized to seize them in order to pay for delinquent property taxes. The Code provides that every 30 days the utility may seek payment of charges from the escrow account, and that if such payment is not made within five days, the utility may discontinue service. *See* Detroit Code § 56–4–30.

The Supreme Court set out the general law of preemption in *Louisiana Public Service Commission v. Federal Commu-*

*nications Commission,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986):

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulations.

*Id.* at 368–69, 106 S.Ct. at 1898–99 (citations omitted).

We find no conflict between the Detroit ordinance and any section of the Bankruptcy Code that would implicate the doctrine of preemption as set out above. First, we note that there is no conflict between the ordinances and 11 U.S.C. § 366 upon which the district court relied. That section provides as follows:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the com-

---

**5.** The Code provisions do not exempt property under the management of a trustee. The term "landlord" under the Code refers to "persons in control or management of the building" and would by its terms include the trustee. *See* Order for Management of Properties entered Feb. 4, 1986 (granting the Trustee "the right and authority to fully and completely manage the premises commonly known as 445 Fisher Freeway.")

**6.** The Code allows the landlord to "petition the department for an administrative hearing on the validity of the department's finding of imminent threat and hazard to health." Section 56–4–32.

**7.** Section 56–4–23 reads, in pertinent part:

> At the same time that a utility shall give notice of discontinuance of service, it shall notify the occupants of each rental unit in writing of the proposed discontinuance of service by the utility, the name and address of the utility's customer and of the procedure that the occupants may follow to provide for the continuance of such utility service to their premises by making their rental payments to the buildings and safety engineering department of the city in accordance with the provisions of section 56–4–25.... In addition to the notice to occupants ... every utility posting a notice of discontinuance of utility service shall immediately thereafter notify the department, other public utilities and the water department in writing of such posting....
> Detroit Code § 56–4–23.

mencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

The intended effect of section 366(a) is to prevent a utility from withholding post-petition service in order to enforce payment of pre-petition debts, so long as the debtor or trustee provides adequate security for payment of future bills.[8] *See* 2 L. King, *Collier on Bankruptcy* §§ 366.01–.03 (15th ed. 1990). While a utility may not terminate service for failure to pay pre-petition arrearages, and may not refuse to provide service during the 20 days following the filing of a bankruptcy petition, *see In re Whittaker*, 882 F.2d 791, 794 (3rd Cir.1989), it may terminate service if, after expiration of the 20–day period, the debtor or trustee fails to post adequate assurance of payment for post-petition service. Furthermore, it is well-established that section 366(b) does not, by itself, bar a utility from terminating service to a debtor or trustee who has posted adequate assurance but fails to make a post-petition payment. *See Begley v. Philadelphia Elect. Co.*, 760 F.2d 46, 49 (3rd Cir.1985); *In re Security Investment Properties, Inc.*, 559 F.2d 1321, 1325 (5th Cir.1977); 2 L. King, *Collier on Bankruptcy* §§ 366.01–03 (15th ed. 1990). Section 366 did not, therefore, prevent MichCon from terminating service to 445

Fisher Freeway for failure to pay post-petition bills.

The section makes no provision, however, concerning the *procedures* a utility must follow when terminating a debtor. Nor does the legislative history contain any mention of termination procedures. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 350 (1977), *reprinted in* 1978 U.S. CODE CONG. & ADMIN.NEWS 5787, 5846, 6306. The scope of jurisdiction granted by section 366 to the bankruptcy court is explicitly limited to ordering "reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment," 11 U.S.C. § 366(b), in case the debtor or trustee and the utility cannot reach agreement on the amount. As the Third Circuit explained, once the termination remedy has been sought by the utility in a post-petition context, the "adequate assurance" provision of section 366(b) "no longer has vitality." *Begley*, 760 F.2d at 50.

Although 11 U.S.C. § 366(b) does not stand in the way of utility termination in this case, it does not control the procedure by which such termination may occur. It does not, therefore, preempt state and municipal procedural regulations. *See Begley*, 760 F.2d at 60; *accord In re Whittaker*, 882 F.2d at 794.

MichCon urges that even if section 366 does not preempt state regulations, Congress' general grant of authority to the federal courts over the property of a debtor in a title 11 case under 28 U.S.C. § 1334(c) does effect such preemption. The contention is without merit.

First, we note that although the federal district courts and bankruptcy courts have *jurisdiction* over the property of a title 11 debtor under section 1334(d), this fact alone does not determine what law controls the disposition of the property.[9] In *Midlantic*

---

**8.** In fact, even where a utility has terminated service before a bankruptcy petition has been filed due to non-payment of bills, the plain language of section 366(b) requires the utility to restore service before securing adequate assurance of payment if the debtor or trustee so requests within 20 days of the order granting

relief in bankruptcy. *In re Whittaker*, 882 F.2d 791, 794 (3rd Cir.1989).

**9.** 28 U.S.C. § 1334(d) provides:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property,

*National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986), the Supreme Court held that a bankruptcy court had no authority to authorize abandonment of an asset pursuant to 11 U.S.C. § 554(a) "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." 474 U.S. at 507, 106 S.Ct. at 762.[10]

Explaining its holding, the Court wrote: "If Congress wishes to grant the trustee an extraordinary exemption from nonbankruptcy law, 'the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt.'" 474 U.S. at 501, 106 S.Ct. at 759 (quoting *Swarts v. Hammer,* 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904)); *see also Palmer v. Massachusetts,* 308 U.S. 79, 85, 60 S.Ct. 34, 37, 84 L.Ed. 93 (1939) ("If this old and familiar power of the states [over local railroad service] was withdrawn when Congress gave district courts bankruptcy powers over railroads, we ought to find language fitting for so drastic a change." (*Quoted in Midlantic,* 474 U.S. at 501, 106 S.Ct. at 759)).

In its reading of 28 U.S.C. § 959(b), the *Midlantic* Court found persuasive evidence "that Congress did not intend the Bankruptcy Code to pre-empt all state laws." 474 U.S. at 505, 106 S.Ct. at 761. That section provides explicitly that a bankruptcy trustee must administer the bankrupt's estate in accordance with state law:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws

of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

As the District of Columbia Circuit held recently, the courts must exercise special caution before finding state health and safety regulations preempted by the Bankruptcy Code. In *Saravia v. 1736 18th Street N.W., Ltd.,* 844 F.2d 823 (D.C.Cir. 1988), the court explained that, where health and safety regulations are challenged under the supremacy clause:

> [C]ourts are not to condemn them to the oblivion of preemption doctrine "unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947) . . .; indeed, section 959(b) looks in exactly the opposite direction. Nor will the general bankruptcy policy of fostering the rehabilitation of debtors serve to preempt otherwise applicable state laws dealing with public safety and welfare. This, we believe, is the import of 28 U.S.C. § 959(b). . . .

844 F.2d at 827. *See also Begley,* 760 F.2d at 51 ("Congress did not intend to preempt and render inoperative all state procedural protections provided to residential utility customers by state statutes and regulations."); *In the Matter of the Briarcliff,* 15 B.R. 864 (D.N.J.1981).

We see no reason why the protections afforded to tenants by the Detroit Code may not be reconciled with the obligations of the bankruptcy trustee to manage the Woodward estate as would an owner "according to the valid laws of the State" of Michigan. 28 U.S.C. § 959(b). Accordingly, we find that the Detroit Code provisions governing utility termination procedures are not preempted by either the terms or the "general policies" of the Bankruptcy Code. The district court therefore erred in

---

wherever located, of the debtor as of the commencement of such case, and of property of the estate.

**10.** The Detroit Code's provisions for utility termination are obviously "reasonably calculated

to protect the public health or safety from imminent and identifiable harm." *Midlantic,* 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9. *See* Detroit Code § 56–4–22(a).

**590**

finding the plaintiffs' state law claims against MichCon preempted by federal law.[11]

## IV. Summary Judgment in Favor of Allard

In their complaint against Allard, the plaintiffs alleged that the Trustee had "caused the discontinuance of gas to the premises by his omission to pay for the gas," in violation of Detroit Code § 56–4–23, Mich.Comp. Laws Ann. § 600.2918(2)(f), and in breach of the implied covenant contained in Mich.Comp. Laws Ann. § 554.139(1)(b).

On appeal, the plaintiffs contest only the court's decision on their claim alleging a violation of Mich.Comp. Laws Ann. § 600.2918(2)(f). That statute provides that a tenant whose possessory interest in a premises, including the termination or interruption of heat, hot water, and gas service, has been unlawfully interfered with may recover either damages or possession.[12] The statute also provides, however, that this remedy "shall not apply where the owner, lessor, licensor, or their agents can establish that he: (a) Acted pursuant to a court order...." Mich. Comp. Laws Ann. § 600.2918(3)(a).

As noted above, on February 2, 1986, the bankruptcy court ordered the Trustee to contract with MichCon to provide gas services to 445 Fisher Freeway. That order further provided "that the Trustee shall receive the rents and from the proceeds thereof pay MichCon for the heating gas service at its authorized rates." The order then specified that "[t]he Trustee shall hold any remaining funds pending further order

of this court." It is clear from the bankruptcy court's language that the Trustee was authorized to pay for heating gas service only "from the proceeds" of the rents collected from the tenants of 445 Fisher Freeway. The district court determined that the Trustee did not have sufficient funds available from rents to continue paying for gas at the time payment ceased, and the plaintiffs have failed to present any facts to refute this finding. Accordingly, we agree with the district court that Allard was acting pursuant to a court order when he ceased payment for natural gas, and that he therefore may not be held liable according to Mich.Comp. Laws Ann. § 600.2918(3)(a).

Plaintiffs respond that even if the order were construed to allow the Trustee to discontinue payment, the bankruptcy court had no jurisdiction to authorize the discontinuance of payment for gas "in violation of state and local law." They state that the court's order was therefore not issued from a court of competent jurisdiction and is not a "court order" within the meaning of Mich.Comp. Laws Ann. § 600.2918(3)(a). The plaintiffs' argument, however, attacks the merits of the bankruptcy judge's order, not his jurisdiction to issue it. The exception contained in section 600.2918(3)(a) covers all actions taken pursuant to a court order, regardless of the order's legal soundness. Accordingly, the district court properly disposed of all claims against Allard contained in the original complaint. We find that the court erred, however, in failing to consider the plaintiffs' proposed amended complaint.

**11.** We hold only that the district court erred in deciding that plaintiffs' state law claims were preempted by the Bankruptcy Code. We express no opinion on the merit of these claims or on any defense MichCon may raise based on the argument that it acted in conformity with the order.

**12.** Mich.Comp. Laws Ann. § 600.2918 reads, in pertinent part, as follows:

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to

recover the amount of his actual damages or $200.00 whichever is greater, for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:

....

(f) Causing, by action or omission, the termination or interruption of a service procured by the tenant or which the landlord is under an existing duty to furnish, which service is so essential that its termination or interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.

## V. Failure to Grant Leave to Amend the Complaint

As noted above, the district court never issued a ruling on the plaintiffs' motion to amend their complaint. Federal Rule of Civil Procedure 15(a) states, in relevant part, that "a party may amend the party's pleading only by leave of court or written consent of the adverse party; and leave shall be freely given when justice so requires." Decisions as to when justice requires amendment are left to the sound discretion of the trial judge, and we review those decisions under an abuse of discretion standard. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir.1986). We recently set out the factors that a district court may consider in the exercise of its discretion:

> Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir.1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973)).

Upon review of the record, we see no evidence that the district judge exercised the discretion committed to him by Rule 15. In fact, it appears that the motion to amend was simply ignored until after judgment was rendered. While Allard argues that the claims raised in the amended complaint are without merit and that leave to amend would therefore be futile, that is a decision the district court alone is in a position to make. Accordingly, upon remand, the district court is directed to consider and rule upon plaintiffs' motion to amend their complaint against Allard.

The decision of the district court is VACATED, and the case is REMANDED for disposition in accordance with this opinion.

BAILEY BROWN, Senior Judge, concurring.

I concur in all respects except that I would, under section III, reach the result by a different route.

It is true that the district judge granted summary judgment to MichCon on the basis that 11 U.S.C. § 366(b) authorized the bankruptcy court's order with respect to the procedure for cutting off service and that the federal law, under the Supremacy Clause, "preempts" the state law. However, the panel opinion holds, I think correctly, that § 366(b) simply does not control the procedure for cutting off service. The opinion states: "Although 11 U.S.C. § 366(b) does not stand in the way of utility termination in this case, *it does not control the procedure* by which such termination may occur." (Emphasis added.) (Maj. at 588) Since federal bankruptcy law does not control such procedure, the opinion holds that appellants are entitled to rely on procedures prescribed by state law. Therefore, it seems to me, the error of the district court was not, as stated by the panel opinion, in holding that federal law "preempted" state law; the error was in not applying the only applicable law, which is state law. This is not to say, as the panel opinion recognizes, that, MichCon would not be entitled to rely on a defense based on its compliance with bankruptcy court order or any other defense. It is only to say that, with respect to the procedure to be followed by MichCon in terminating service, state law applies.