In re G.T.L. CORPORATION, Debtor.

Bankruptcy No. 97–60822.

United States Bankruptcy Court,
N.D. Ohio.

June 26, 1997.

Michael V. Demczyk, McNamara and Freeman, Uniontown, OH, for G.T.L. Corp.

Russ Kendig, Ross, Donohew and Arnold, Canton, OH, for Mary Ann Galmish.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Pending before the Court is the involuntary petition of Edwin Davila, Esquire, under Section 302 of Title 11 of the United States Code (Title 11 or the bankruptcy code). This petition seeks to commence a proceeding under chapter 7 of the bankruptcy code against putative debtor, G.T.L. Corporation (G.T.L.)

An answer filed by Donald M. Miller, Esquire, on behalf of G.T.L. was received by the Court on April 14, 1997. The answer contested the involuntary petition. In accordance with the requirements of Rule 1013 of the Federal Rules of Bankruptcy Procedure, a hearing on the petition was scheduled for April 30, 1997. However, prior to the hear-

ing date, on April 16, 1997, a second answer to the petition was filed by Michael V. Demczyk, Esquire, who also claimed to represent G.T.L. This answer stated that G.T.L. was insolvent and consented to the petition.

To inquire into the inconsistency presented by the two answers, the Court ordered all interested parties to appear in chambers for a status conference on April 28, 1997. The information garnered at that conference raised jurisdiction concerns for this Court. Accordingly, the Court directed Mr. Miller and Mr. Demczyk to prepare and file briefs discussing the Court's jurisdiction. The hearing scheduled for April 30, 1997, was postponed.

The briefs have been filed, read, and carefully considered by the Court. The Court will now proceed with a *sua sponte* examination of its subject matter jurisdiction over the issues placed before it. In addition, under the provisions of Section 157(b)(3) of Title 28 of the United States Code, the Court will conduct a *sua sponte* examination to determine the core or non-core nature of the proceedings.

### FACTS[1]

G.T.L. is an Ohio corporation chartered in 1986. Its assets consist of over 85 acres of undeveloped real estate near the Belden Village shopping complex in Jackson Township, Stark County, Ohio, and a commercial building in Massillon, Ohio. When incorporated, the sole officer, director and shareholder of G.T.L. was Guy Cicchini. However, Cicchini's former spouse, Mary Ann Galmisk, acquired a 50% interest in G.T.L. in a property settlement and support agreement entered into as part of their divorce proceeding in the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio.

Both Cicchini and Galmish agree that G.T.L. and their interests would best be served by a sale of the undeveloped Belden Village acreage and the Massillon building. However, since each owns exactly 50% of G.T.L.'s assets, neither can act to sell the Land without the consent of the other. The former spouses have a profound distrust of one another. As such, the land has sat fallow for a number of years.

■ On August 5, 1996, Cicchini filed a complaint against Galmish in the Court of Common Pleas, Stark County, Ohio for corporate dissolution of G.T.L. and the appointment of a receiver.[2] The complaint alleged deadlock in the management of G.T.L. It stated that the deadlock was largely based on the failure of the parties to agree on the liquidation of the real estate assets of G.T.L. The complaint was later amended to add G.T.L. as a named defendant. A pre-trial conference was conducted by Judge John G. Haas in this action on January 23, 1997. A final pre-trial conference was scheduled for March 20, 1997, and trial was set for April 7, 1997. However, this schedule was suspended upon the filing of Mr. Davila's involuntary petition on March 21, 1997.

At the status conference held before this Court on April 28, 1997, it was disclosed that Mr. Demczyk represents the interests in G.T.L. held by Cicchini. Mr. Miller represents the interests in G.T.L. held by Galmish. The status of the other attorneys involved in this case is also noteworthy. The petitioner, Mr. Davila, is the long time attorney for Chicchini. Janel M. Myers, who represented Cicchini in his state court action, has also entered an appearance in this case on his behalf. Andrea Ginella has entered an appearance for Avanti Corporation, an entity controlled by Cicchini. Galmish is also represented by Russ Kendig. Mr. Kendig, rather than Mr. Miller, is the attorney who took the most active role in defending Galmish's interest in G.T.L. at the status conference.

---

1. While, at the present time, the procedural posture of this case has precluded the Court from holding a formal hearing, both jurisdictional briefs filed by the parties contain a statement of the relevant facts. The uncontested facts recounted in these statements will constitute the findings of the Court unless otherwise indicated.

2. The Court has examined all documents filed with the Stark Count Clerk of Courts in relation to *Cicchini v. Galmish*, 1996 CV 01571 (August 5, 1996). Judicial notice is hereby taken of all public documents relating to this case.

Mr. Kendig is also the attorney who submitted Galmish's jurisdictional brief.[3]

## DISCUSSION

■ Subject matter jurisdiction refers to the power of a court to hear a case of the type in question and render judgment. 16 *Moore's Federal Practice* § 108.04[1] p. 108–17 (Matthew Bender 3rd ed. rev.1997). "[F]ederal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them." *Michigan Employment Security Commission v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1137 (6th Cir.1991). Lack of subject matter jurisdiction is a defect that cannot be cured by consent of the parties and cannot be waived. *American Fire and Cas. Co. v. Finn,* 341 U.S. 6, 17–18 [71 S.Ct. 534, 541–542, 95 L.Ed. 702] (1951). This Court, like all federal courts, has a duty to examine all claims brought before it for defects in subject matter jurisdiction. *Mansfield C. & L.M. Railway Co. v. Swan,* 111 U.S. 379, 382–386, 4 S.Ct. 510, 511–514, 28 L.Ed. 462 (1884).

■ In addition, unlike courts created under the provisions of Article III of the United States Constitution, bankruptcy courts have additional restrictions placed on their powers. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). To comply with these constitutional restrictions, Congress has promulgated Section 157(b)(3) of Title 28 to the United States Code. This section states, "The bankruptcy judge shall determine, on the judge's own motion … whether a proceeding is a core proceeding … or is a proceeding that is otherwise related to a case under [T]itle 11…." 28 U.S.C. § 157(b)(3). Absent consent of all parties, a bankruptcy court cannot enter a final order of judgment on non-core proceedings merely related to a case under Title 11. *See* 28 U.S.C. § 157(c).

This authority compels the conclusion that the Court has a duty to inquire into its subject matter jurisdiction and the core nature of the proceedings that have been placed before it. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law.

## I. Article III Subject Matter Jurisdiction

■ Congress' grant of subject matter jurisdiction to the district courts over bankruptcy cases and proceedings is found in Section 1334 of Title 28 of the United States Code. That section provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under [T]itle 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11.

28 U.S.C. § 1334. The Sixth Circuit has stated:

Section 1334 lists four types of matters over which the district court has jurisdiction: (1) "cases under [T]itle 11," (2) "proceedings arising under [T]itle 11," (3) proceedings "arising in" a case under [T]itle 11, and (4) proceedings "related to" a case under [T]itle 11.

*Wolverine,* 930 F.2d at 1141. Thus, reading Section 1334 in conjunction with Sixth Circuit precedent, the district courts have original and exclusive jurisdiction over bankruptcy cases but have concurrent jurisdiction with the state courts as to proceedings arising in, arising under, or related to bankruptcy cases.

■ A case is the umbrella under which all of the proceedings occur. 1 *Collier on Bankruptcy* ¶ 301[3] p. 3–12 (Matthew Bender 15th ed. rev.1997). It refers to the bankruptcy petition under Sections 301, 302, or 303. *Wolverine,* 930 F.2d at 1141 (citing, *Robinson v. Michigan Consolidated Gas Co.,* 918 F.2d 579, 583 (6th Cir.1990)). A proceeding can be thought of as a step within

---

3. The Court notes that Mr. Davila's statements at the status conference clearly demonstrated that he supports the positions taken by the attorneys representing Cicchini's interest in G.T.L.

the bankruptcy case. *Id.* at 1141 n. 14 (citing, 2 *Collier on Bankruptcy* ¶ 301.03 (15th ed.1990)). It encompasses all disputes that rise to the level of a litigated or contested matter. *Id.*

▮ The Court has no doubt that the involuntary petition pending before it can be classified as a case allowing exclusive jurisdiction under Section 1334(a). The district courts' and the Court's jurisdiction to hear an involuntary petition is beyond dispute. If that were the only item before the Court, no jurisdictional briefing by the parties would have been necessary.

▮ However, inextricably intertwined with Mr. Davila's involuntary petition is the issue of who has authority to act on behalf of the putative debtor, G.T.L. If Cicchini controls G.T.L., the answer filed by Mr. Demczyk consenting to the involuntary petition should be allowed. If Galmish controls G.T.L., the answer filed by Mr. Miller contesting the involuntary petition must be recognized. Who controls G.T.L. and has the power to file an answer on its behalf is, in the Court's analysis, a proceeding. It is a proceeding because is step in the bankruptcy case that has been raised to the level of a disputed or litigated matter. *See Wolverine,* 930 F.2d at 1141 n. 14.

▮ The Court believes this proceeding falls under the jurisdiction of the district courts by virtue of Section 1334(b). The Sixth Circuit has stated:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between the second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11). These references operate conjunctively to define the scope of jurisdiction. *See In re Wood,* 825 F.2d [90, 93 (5th Cir.1987) ]. Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a

matter is at least "related to" the bankruptcy. *Id.*

*Wolverine,* 930 F.2d at 1141. "Related to" jurisdiction is an expansive concept. *Id.* A proceeding relates to bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 1142 (quoting, *In re Pacor, Inc.,* 743 F.2d 984, 994 (3d Cir.1984)).

▮ Given this test, it is obvious that determination of who controls G.T.L. is, at a minimum, related to the bankruptcy case. The outcome of the proceeding will determine who may answer the involuntary petition and will affect the bankruptcy case. It is clear that Congress has vested the district courts with subject matter jurisdiction to hear the claims presently pending. The extent of that jurisdiction resident in the Court, as a bankruptcy court created by Congress under the powers granted in Article I of the United States Constitution, is another matter.

## II. Bankruptcy Court Jurisdiction under 28 U.S.C. § 157.

▮ District courts may provide that cases under Title 11, proceedings arising under Title 11, proceedings arising in a case under Title 11, or proceedings related to a case under Title 11 shall be referred to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Ohio has made such provisions. (*See* N.D.Ohio Gen. Order No. 84 (July 16, 1984)). As such, bankruptcy courts in the district may hear and determine all cases under Title 11 or core proceedings.[4] 28 U.S.C. § 157(b)(1). However, as mentioned above, restrictions are placed on the hearing of non-core proceedings.[5] As stated in Section 157(c):

> (1) a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under [T]itle 11. In such proceeding, the bankruptcy judge shall submit proposed find-

---

4. A core proceeding includes proceedings arising under Title 11 or arising in a case under Title 11. *Wolverine,* 930 F.2d at 1144 (quoting, *Wood* 825 F.2d at 96).

5. A non-core proceeding is defined as a proceeding that is merely related to a case under Title 11. *Wolverine,* 930 F.2d at 1144 (quoting, *Wood,* 825 F.2d at 96).

ings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering tie bankruptcy judge's proposed finding and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under [T]itle 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this [T]itle.

28 U.S.C. § 157(c). Absent consent the Court can only enter proposed findings of fact and conclusions of law with respect to non-core proceedings. *Id.*

█ This Court has previously held:

A non-core [or related to] proceeding is one filed in the bankruptcy court alleging a cause of action which:

(1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N),

(2) existed prior to the filing of the bankruptcy case,

(3) would continue to exist independent of the provisions of [T]itle 11, and

(4) the parties' rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case.

*Parke Imperial Canton, Ltd. v. Developers Diversified Realty Corp. (In re Parke Imperial Canton, Ltd.)*, 177 B.R. 544, 548 (Bankr. N.D.Ohio 1994) citing, *Commercial Heat Treating of Dayton, Inc. v. Atlas Industries, Inc. (In re Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 888 (Bankr. S.D.Ohio 1987). The Court is mindful that the legislative history indicates that Congress intended the definition of core proceeding to be interpreted broadly. *Id.* However, in the case at bar, determination of who controls G.T.L. is simply not a core proceeding.

Cicchini and Galmish each own a 50% share of G.T.L. and are deadlocked as to how the corporation should proceed to sell its assets. As alleged in the state court complaint before Judge Haas, this is a proceeding specifically controlled by the corporate law of the State of Ohio. A determination that a proceeding is non-core cannot be made solely on the basis that its resolution may be affected by state law. 28 U.S.C. § 157(b)(3). However, the proceeding between Cicchini and Galmish carries many red flags in addition to the fact that it is based entirely on state law. It is not identified in Section 157(b)(2)(B) through (N). Furthermore, it existed prior to the filing of the bankruptcy case and was the subject of state court litigation. The dispute would continue even if the involuntary petition were withdrawn. Finally, Cicchini's and Galmish's right to control G.T.L. and the dissolution of the corporation were not significantly affected as a result of the filing of the bankruptcy case. As such, the Court is forced to conclude that the proceeding between Cicchini and Galmish relating to the control of G.T.L. is a non-core proceeding. Unless all parties consent, the Court may only enter proposed findings of fact and conclusions of law in its consideration of this proceeding. District court must enter the final order.

## III. Mandatory Abstention

█ Section 1334(c)(2) provides the requirements for mandatory abstention. It states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under [T]itle 11 but not arising under [T]itle 11 or arising in a case under [T]itle 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). It is hard to imagine a proceeding that more squarely fits under the provisions of mandatory abstention. It

has already been decided that the proceeding to determine who controls G.T.L. is based upon state law and merely relates to the bankruptcy case. A trial date on this proceeding was set and would have been held but for the filing of Mr. Davila's involuntary petition. There is no basis to believe, and it has not been alleged, that timely adjudication could not take place in state court. Furthermore, this proceeding, absent its relationship to bankruptcy, states no basis for federal jurisdiction. It is not a federal question, diversity of citizenship has not been presented, and it does not give rise to supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1332 and 1367.

A request for abstention was made by Galmish in her jurisdictional brief filed with the Court.[6] As such, the Court has no option; it must abstain from hearing the proceeding between Galmish and Cicchini. Furthermore, even if abstention were not mandatory, the factors to consider for discretionary abstention weigh heavily in favor of forbearance by the Court.[7]

### CONCLUSION

The Court finds that it has jurisdiction over the involuntary petition filed by Mr. Davila. However, the proceeding between Cicchini and Galmish to determine who controls G.T.L. is non-core and subject to mandatory abstention. Because the Court cannot determine who has the power to file an answer on behalf of G.T.L., the hearing on Mr. Davila's involuntary petition will be indefinitely continued. The Court is well aware of its duty to promptly adjudicate involuntary petitions that are placed before it. However, due to the unusual facts of this case and the close relationship between Cicchini and Davila, the Court is confident that no creditors will be harmed by its decision to delay consideration of the involuntary petition.

An Order in accordance with the foregoing shall issue forthwith.

---

6. The fact that this request was for discretionary abstention under Section 1334(c)(1) is irrelevant. When the request was made, Galmish was not aware that the Court would consider the dispute between her and Cicchini to be a separate non-core proceeding. Clearly, Galmish would have made her motion under the mandatory abstention provisions of Section 1334(c)(2) if the Court's position had been known. Furthermore, if Galmish did not wish to move for mandatory abstention, she may file a motion for reconsideration under Rule 59 of the Federal Rules of Civil Procedure as incorporated into Rule 9023 of the Federal Rules of Bankruptcy Procedure.

7. In a previous opinion, the Court listed six factors that should be considered when determining discretionary abstention under 1334(c)(1). These factors are:

(1) convenience of the federal forum; (2) avoidance of piecemeal litigation; (3) the order in which the courts obtained jurisdiction; (4) whether either court has assumed jurisdiction over property; (5) the source of law for the decision; and (6) whether the state court can adequately protect the rights of the party seeking federal jurisdiction.

*Parke Imperial,* 177 B.R. at 549 (citing, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 17–19 [103 S.Ct. 927, 937–939, 74 L.Ed.2d 765] (1983); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818 [96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483] (1976)).